United States District Court
Southern District of Texas

**ENTERED**

February 28, 2018

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

A.M.Y. PROPERTY & CASUALTY     §
INSURANCE CORPORATION, et al.,  §
                                §
        Plaintiffs,             §
                                §
v.                              §        CIVIL ACTION NO. H-17-956
                                §
INSURANCE COMPANY OF            §
NORTH AMERICA, et al.,          §
                                §
        Defendants.             §

<u>**MEMORANDUM AND RECOMMENDATION**</u>

Pending before the court[1] are Defendant Insurance Company of North America's ("INA") Motion to Dismiss (Doc. 5) and Defendants Symetra Assigned Benefits Service Company ("SABSCO") and Symetra Life Insurance Company's Motion for Partial Dismissal ("SLIC")(collectively "Symetra Defendants") (Doc. 28). The court has considered the motions, the responses, the replies, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that INA's motion be **GRANTED** and Symetra Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.

## I.  Case Background

Plaintiffs A.M.Y. Property & Casualty Insurance Corporation ("AMY") and RSL-3B-IL, Limited Partnership, ("RSL-3B LP") filed this case against an issuer of three structured-settlement

---

[1]      This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  <u>See</u> Doc. 9, Ord. Dated June 15, 2017.

annuities and an owner of one of the three annuities, alleging that certain annuity payments were not made and others were expected not to be paid to the party to whom the right had been assigned pursuant to court-approved transfer orders.   Plaintiffs asserted breach of contract, conversion, and wrongful offset and requested declaratory relief.

## A.   **Factual Background**

Relevant to the pending motions are facts related to certain factoring agreements and to certain business transactions.

### 1.   **Factoring Agreements**

Rapid Settlement, Ltd., ("Rapid") entered into three separate factoring agreements with structured-settlement annuitants.[2]  RSL-3B-IL, Ltd.,[3] became the assignee of Rapid Settlements, Ltd.'s rights in all three cases.[4]   SAFECO Life Insurance Company ("SAFECO"), now SLIC, was the annuity issuer for each of the

---

[2]     See Doc. 1, Pls.' Orig. Compl. pp. 4, 7-8.

[3]     Plaintiffs alleged in their complaint that Rapid assigned its rights to RSL-3B LP; however, the supporting documentation attached to the complaint indicates that the assignments of all three transfers were to RSL-3B-IL, Ltd. Compare id. pp. 4-5, 7-8 with Doc. 1-4, Ex. 4 to Pls.' Orig. Compl., Stipulation p. 1; Doc. 1-8, Ex. 8 to Pls.' Orig. Compl., Amended Order of Transfer Nunc Pro Tunc p. 14; Doc. 1-10, Ex. 10 to Pls.' Orig. Compl., Letter from SAFECO to Rapid Dated Mar. 23, 2004.  Plaintiffs explained these discrepancies in a footnote in Plaintiffs' response to INA's motion: "Plaintiff [RSL-3B LP] is the successor entity to RSL-3B-IL, Ltd.[,] after RSL-3B-IL, Ltd.[,] re-incorporated in Wyoming."  Doc. 15, Pls.' Resp. to INA's Mot. to Dismiss p. 1 n.1.  Neither the explanation nor the cited document (which provides hearsay evidence of the assertion) offered a date when the reorganization occurred.  See id.; Doc. 1-17, Ex. 17 to Pls.' Orig. Compl., Letter from RSL Funding, LLC, to INA Dated Dec. 28, 2016.  The complaint itself contains no factual allegation regarding the reorganization.  See Doc. 1, Pls.' Orig. Compl.

[4]     See Doc. 1, Pls.' Orig. Compl. pp. 4-5, 7-8.

subject annuities.[5]

As to one of the transfers, the one concerning the annuitant Jodie Koehler ("Koehler"), INA was the annuity owner.[6]  In 1989, INA entered into a settlement agreement with Koehler and another individual with the same surname to resolve a lawsuit for personal injuries and damages that the Koehlers had filed against INA's insureds.[7]  The settlement agreement provided for an immediate payment to the Koehlers and periodic payments to Koehler over a span of nearly twenty-seven years and allowed INA to purchase an annuity contract from SAFECO to fund INA's liability for the periodic-payment portion of the settlement.[8]  The settlement agreement further provided that it was to "be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each."[9]  Pennsylvania law governed the settlement agreement.[10]

In December 2003, Koehler transferred and assigned to Rapid one periodic payment in the amount of $153,500 due on August 4,

---

[5]     See id. pp. 3, 7-8.

[6]     See id. p. 3.

[7]     See Doc. 1, Pls.' Orig. Compl. p. 3; Doc. 1-1, Ex. 1 to Pls.' Orig. Compl., Settlement Agreement & Release of All Cls.

[8]     See Doc. 1-1, Ex. 1 to Pls.' Orig. Compl., Settlement Agreement & Release of All Cls. p. 3.

[9]     Id. p. 7; see also Doc. 1, Pls.' Orig. Compl. p. 3.

[10]     See Doc. 1-1, Ex. 1 to Pls.' Orig. Compl., Settlement Agreement & Release of All Cls. p. 7.

2016.[11]   The transfer agreement between Koehler and Rapid granted Rapid:

> an irrevocable Power of Attorney with full powers of substitution to do all acts and things that [Koehler] might do regarding the Periodic Payments and any and all rights [Koehler] has under the Settlement Agreement, including, without limitation, the power to endorse checks, drafts or other instruments, the power to alter, edit and change payment instructions and/or beneficiary designation and any other act which, in the sole discretion of [Rapid] as Assignor's Attorney-in-Fact, is necessary or expedient for [Rapid] to obtain all of the benefit of the bargain contemplated by this Agreement.[12]

The transfer agreement also provided Rapid a security interest in the assigned payment, the right to file financing statements, and a lien on all of Koehler's periodic payments.[13]   Koehler and Rapid agreed that the transfer agreement was to be binding upon and inure to the benefit of the parties thereto, as well as "their respective successors, heirs, legal representatives and permitted assigns."[14]   According to the terms, Rapid could assign its rights under the transfer agreement.[15]   Texas law governed the transfer agreement.[16]

   In connection with Rapid's efforts to secure the required court approval of the transfer, Rapid, RSL-3B-IL, Ltd., INA, and

---

[11]   See Doc. 1, Pls.' Orig. Compl. p. 4; Doc. 1-3, Ex. 3 to Pls.' Orig. Compl., Transfer Agreement.

[12]   See Doc. 1-3, Ex. 3 to Pls.' Orig. Compl, Transfer Agreement p. 4.

[13]   See id. pp. 4-5.

[14]   Id. p. 5.

[15]   See id. p. 6.

[16]   See id. p. 5.

4

SAFECO entered a stipulation.[17]   Therein, INA and SAFECO agreed to abide by the stipulation and not to oppose the court petition to approve the transfer.[18]   Further, INA agreed to direct SAFECO to forward the assigned payment to RSL-3B-IL, Ltd., as Rapid's assignee, and SAFECO agreed to make the assigned payment according to the terms of the stipulation.[19]   The stipulation stated that, in the event that Rapid or RSL-3B-IL, Ltd., further assigned the transferred payment, neither INA nor SAFECO would be obligated to re-direct the payment to any person or entity other than RSL-3B-IL, Ltd.[20]   The stipulation included a release clause and an indemnity clause inuring to the benefit of INA and SAFECO.[21]   Pennsylvania law governed the stipulation.[22]

On September 13, 2004, the Court of Common Pleas of Montgomery County, Pennsylvania, entered an order transferring Koehler's payment of $153,500 due on August 4, 2016, to "Rapid and/or RSL-3B-IL, Ltd."[23]   The order stated that, at the direction of INA, SAFECO would forward the assigned payment to RSL-3B-IL, Ltd., and that all

---

[17]   See Doc. 1, Pls.' Orig. Compl. pp. 4-5; Doc. 1-4, Ex. 4 to Pls.' Orig. Compl., Stipulation.

[18]   See Doc. 1-4, Ex. 4 to Pls.' Orig. Compl., Stipulation p. 3.

[19]   See id.

[20]   See id.

[21]   See id. pp. 4-5.

[22]   See id. p. 6.

[23]   Doc. 1-5, Ex. 5 to Pls.' Orig. Compl., Ord. of Transfer p. 3; see also id. p. 3; Doc. 1, Pls.' Orig. Compl. pp. 6-7.

of Koehler's rights in connection thereto were assigned to Rapid and/or RSL-3B-IL, Ltd.[24]  The order repeated that neither INA nor SAFECO would be obligated to redirect the payment or any portion thereof to any other person or entity should the payment be further assigned.[25]  It also repeated the release and indemnity clauses of the stipulation.[26]  In a letter dated October 12, 2004, INA directed SLIC to forward the Koehler payment to RSL-3B-IL, Ltd.[27]

The other two annuitants, Thomas Purcell ("Purcell") and Janice Scott ("Scott") also entered factoring agreements.[28]  In February 2004, the Superior Court of New Jersey, Middlesex County, entered an amended order of transfer concerning certain payments from Purcell to Rapid, and Rapid further assigned the payments to RSL-3B-IL, Ltd.[29]  On March 1, 2007, the Civil County Court of Harris County, Texas, entered an amended order of transfer concerning certain payments from Scott to RSL-3B-IL, Ltd.[30]

On July 20, 2016, the attorney for Symetra Defendants notified

---

[24]   See Doc. 1-5, Ex. 5 to Pls.' Orig. Compl., Ord. of Transfer p. 3.

[25]   See id. p. 4.

[26]   See id. pp. 4-6.

[27]   See Doc. 1-18, Ex. 18 to Pls.' Orig. Compl., Letter from Drinker Biddle & Reath LLP to SLIC Dated Oct. 12, 2004.

[28]   See Doc. 1, Pls.' Orig. Compl. pp. 7-8.

[29]   See Doc. 1, Pls.' Orig. Compl. p. 8; Doc. 1-10, Ex. 10 to Pls.' Orig. Compl., Am. Ord. & Letter from SAFECO to Rapid Dated Mar. 23, 2004.

[30]   See Doc. 1, Pls.' Orig. Compl. p. 7; Doc. 1-8, Ex. 8 to Pls.' Orig. Compl., Am. Ord. of Transfer Nunc Pro Tunc.

AMY that they were executing on a judgment in their favor "entered against RSL-3B-IL, Ltd./Rapid Settlements Ltd. by applying an offset" to a $20,000 Scott payment due on July 15, 2016, and to the $153,500 Koehler payment due on August 4, 2016.[31]  On December 28, 2016, Stewart Feldman ("Feldman"), in his role as chief executive officer of RSL Funding, LLC, sent a demand letter to INA regarding the Koehler payment.[32]  "Another demand letter was sent on March 27, 2017[,] demanding payment of the sums outstanding."[33]

### 2.  Business Transactions

Beginning in 2003, a series of assignments and financing transactions moved the rights to the annuity payments among various entities.[34]  In 2003, AMY made a loan to RSL-3B LP[35] that was "modified, amended, and extended from time to time."[36]  The loan documents included "security agreements and [Uniform Commercial Code ("UCC")]-1 and UCC-3 financing statements covering the

---

[31]     Doc. 1-16, Ex. 16 to Pls.' Orig. Compl., Letter from Medora A. Marisseau to Stewart Feldman ("Feldman"), et al., Dated July 20, 2016; see also Doc. 1, Pls.' Orig. Compl. p. 11.

[32]     See Doc. 1, Pls.' Orig. Compl. p. 11; Doc. 1-17, Ex. 17 to Pls.' Orig. Compl., Letter from Feldman to INA Dated Dec. 28, 2016.

[33]     Doc. 1, Pls.' Orig. Compl. p. 11.

[34]     See id. pp. 8-11.

[35]     Even though neither the complaint nor the attached documents indicate when RSL-3B-IL, Ltd., became RSL-3B LP, the court reads the allegations favorably to Plaintiffs and assumes from the context that the transformation occurred prior to this loan.

[36]     Doc. 1, Pls.' Orig. Compl. p. 8.

Koehler, Scott, and Purcell [a]ssigned [p]ayments."[37]   RSL-3B LP
"represented and warranted its right to grant the security interest
in the covered collateral[,] which consisted of all personal
property now owned or hereafter acquired."[38]

In 2004, RSL-3B LP obtained a loan from Amegy Bank, NA,
("Amegy") and pledged a security interest in the Koehler, Scott,
and Purcell payments.[39]   "The original Amegy loan and security
interest went through various extensions, restructures, and
assignments involving different lenders, ultimately being assigned
to Green Bank, NA[,] and to IberiaBank."[40]   The bank "lenders
maintained a continuous lien against the Koehler, Scott, and
Purcell [a]ssigned [p]ayments as noticed and disclosed by UCC-1
financing statements and continuations."[41]

> [In 2008], FinServ Casualty Corp. ("FinServ")
> entered into a participation agreement with [AMY]
> involving the loan to RSL-3B [LP], which was reflected by
> filing a UCC-1 financing statement. Thereafter, the loan
> was split into two loans with a separate loan for
> FinServ, which has been modified, amended and extended
> from time to time with attendant security agreements and
> UCC-1 filings. RSL-3B [LP] made substantially similar,
> if not identical, representations and warranties to
> FinServ.[42]

---

[37]   Id. pp. 8-9.

[38]   Id. p. 9 (internal quotation marks omitted).

[39]   See id. p. 10.

[40]   Id.

[41]   Id.

[42]   Id. p. 9.

In April 2012, RSL-3B LP "transferred and assigned its ownership interest in the Koehler, Scott, and Purcell [a]ssigned [p]ayments[] to RSL 2012-1, LP[,]" and notified Symetra Defendants of the assignment.[43]

In February 2016, the banks assigned the lien and related portion of RSL-3B LP's loan obligation in the Koehler, Scott, and Purcell payments to AMY and FinServ.[44]   In March 2016, AMY and FinServ foreclosed on their interests in the Koehler, Scott, and Purcell payments and purchased the payments at a public auction.[45] As of January 1, 2017, AMY and FinServ merged, leaving AMY as the successor organization.[46]

**B.   Procedural Background**

On March 28, 2017, one day after the second demand letter was sent, Plaintiffs filed the complaint in this action.[47]   Plaintiffs alleged breach of contract, conversion, and wrongful offset against INA and Symetra Defendants.[48]   Plaintiffs also sought declarations that:

---

[43]   Id. p. 9.   Plaintiffs' attorney represented to the court that (although not alleged in the complaint) RSL-2012, LP, took RSL-3B LP's interest in the Koehler, Scott, and Purcell payments subject to the rights of RSL-3B LP's secured creditors.   Doc. 30, Tr. of Hr'g on Aug. 14, 2017 p. 12.

[44]   Doc. 1, Pls.' Orig. Compl. p. 10; see also Doc. 1-12, Ex. 12 to Pls.' Orig. Compl., Assignment of Lien.

[45]   Doc. 1, Pls.' Orig. Compl. p. 10.

[46]   See id. p. 9 n.2.

[47]   See id. p. 1.

[48]   See id. pp. 12-15.

(i) after properly foreclosing its security interests and purchasing the collateral at auction, [AMY] is the rightful owner and proper recipient of the Koehler, Scott, and Purcell [a]ssigned [p]ayments; (ii) INA (and [SLIC] are both obligated to make the Koehler [a]ssigned [p]ayment to [AMY] but have failed to do so; (iii) SABSCO and [SLIC] are both obligated to make the Scott and Purcell [a]ssigned [p]ayments to [AMY] as they come due.[49]

In lieu of an answer, INA filed its pending motion to dismiss.[50] On August 14, 2017, the court held a hearing on INA's motion, at which time Plaintiffs clarified that they "are not asserting the conversion or set off claims against INA."[51] Plaintiffs explained that the request in their response to INA's motion, which was presented in the alternative, sought leave to amend only in order to dismiss those claims against INA.[52] The court instructed Plaintiffs to "[a]mend now" if they thought that "something . . . need[ed] to be corrected."[53]

Defendants Symetra requested and received additional time to respond to Plaintiff's complaint and, after the completion of briefing on INA's motion, filed their pending motion for partial dismissal and answered Plaintiffs' complaint.[54]   Plaintiffs

---

[49]   Id. p. 15.

[50]   See Doc. 5, INA's Mot. to Dismiss.

[51]   Doc. 30, Tr. of Hr'g on Aug. 14, 2017 p. 2.

[52]   See id.

[53]   Id. p. 3.

[54]   See Doc. 3, Agreed Mot. for Extension of Time to Ans. or Otherwise Respond to Pls.' Orig. Compl.; Doc. 8, Ord. Dated June 13, 2017; Doc. 15, Pls.' Resp. to INA's Mot. to Dismiss; Doc. 18, INA's Reply to Pls.' Resp. to INA's Mot.

requested and received an extension to respond to Symetra Defendants' motion, responding on September 20, 2017.[55]   Symetra Defendants filed a replied soon thereafter.[56]

## II.  Dismissal Standard

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court may consider, in addition to the complaint itself, "any documents attached to the complaint[] and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).  The attached documents control in the case of a conflict between the allegations in the complaint and the contents of the documents.  See United States ex rel. Riley v. St. Luke's Epis. Hosp., 355 F.3d 370, 377 (5th Cir. 2004).

The court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 803 n.44

---

to Dismiss; Doc. 22, 2d Agreed Mot. for Extension of Time to Ans. or Otherwise Respond to Pls.' Orig. Compl.; Doc. 25, Ord. Dated July 20, 2017; Doc. 28, Symetra Defs.' Mot. to Dismiss; Doc. 29, Symetra Defs.' Ans.

[55]   See Doc. 32, Agreed Mot. to Extend Pls.' Deadline to Respond to Symetra Defs.' Mot. for Partial Dismissal; Doc. 33, Ord. Dated Sept. 6, 2017; Doc. 34, Pls.' Resp. to Symetra Defs.' Mot. for Partial Dismissal.

[56]   See Doc. 35, Symetra Defs.' Reply to Pls.' Response to Symetra Defs.' Mot. for Partial Dismissal.

11

(5th Cir. 2011)(quoting <u>True v. Robles</u>, 571 F.3d 412, 417 (5th Cir. 2009)).   A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).   Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. 678.   A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555.   In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. 678.

### III. Analysis

INA seeks dismissal of all claims that Plaintiffs asserted against it.   As mentioned above, Plaintiffs dismissed the conversion and wrongful offset claims against INA.[57]   With regard to the remaining claims, INA argues that Plaintiffs lack standing to assert a breach-of-contract claim, that Plaintiffs failed to allege that INA breached any contract, and that Plaintiffs are not

---

[57]     <u>See</u> Doc. 15, Pls.' Resp. to INA's Mot. to Dismiss p. 5 n.3 (stating that Plaintiffs did not assert a wrongful offset claims against INA and seeking leave to amend to nonsuit the conversion claim as against INA); Doc. 30, Tr. of Hr'g on Aug. 14, 2017 p. 2 (stating that Plaintiffs are not asserting a conversion or a wrongful offset claim against INA).

entitled to a declaratory judgment against INA. Symetra Defendants also challenge Plaintiffs' standing to assert a breach-of-contract claim, and they contend that Plaintiffs failed to state a claim for either conversion or wrongful offset.

## A.  Right to Sue for Breach of Contract

The court begins with Defendants' common challenge to Plaintiffs' "standing" to assert a claim for breach of contract. The issue raised is whether Plaintiffs have contractual standing.[58]

The Fifth Circuit recently discussed this concept of standing, explaining that it "is really an issue of contract interpretation that goes to the merits of the claim." Cotton v. Certain Underwriters at Lloyd's of London, 831 F.3d 592, 594 (5th Cir. 2016)(internal quotation marks omitted)(quoting Perry v. Thomas, 482 U.S. 483, 492 (1987)).  The court distinguished contractual standing from constitutional standing, only the latter being an issue of subject matter jurisdiction.  See id. (quoting Novartis Seeds, Inc. v. Monsanto Co., 190 F.3d 868, 871 (8th Cir. 1999)); Norris v. Causey, 869 F.3d 360, 366 (5th Cir. 2017).

INA and Symetra Defendants contend that Plaintiffs lack contractual standing because RSL-3B LP assigned its right to payment to RSL 2012-1, LP, and AMY was only a lender on a loan for which the payments served as collateral.  Plaintiffs argue that

---

[58]    In this section, the court addresses contractual standing according to INA and Symetra Defendants' arguments and framing of the issue.  The court addresses the issue again below in the context of INA's arguments on the merits of AMY's contract claims.

13

RSL-3B LP has standing because it has the "administrative and
custodial right to receive" the Koehler, Scott, and Purcell
payments "under the transfer orders, a stipulation, and [RSL-]3B
[LP]'s contract with RSL 2012-1[, LP]."[59]  Plaintiffs further assert
that AMY's standing is based on its purchase of the Koehler, Scott,
and Purcell payments through foreclosure.  Nothing in Plaintiffs'
complaint suggests that either RSL-3B LP or AMY was an original
party to the settlement agreement or the transfer agreement in any
of the annuitants' factoring transactions or to the Koehler
stipulation.  Furthermore, to state the obvious, the transfer
orders were not contracts.[60]

As for RSL-3B LP's claim that it retained an "administrative
and custodial right to receive" the payment, the allegations and
supporting documentation reveal no such right.  Nothing in the
Koehler stipulation granted RSL-3B LP's predecessor a right to
receive the Koehler payment; rather, the stipulation merely
precluded the transferee from redirecting the payment to any person

---

[59]    Doc. 34, Pls.' Resp. to Symetra Defs.' Mot. for Partial Dismissal p.
5.

[60]    Under the Texas Structured Settlement Protection Act, the terms of
a structured settlement include "the terms of the structured settlement agreement
the annuity contract, any qualified assignment agreement, and any order or other
approval of the court."  Tex. Civ. Prac. & Rem. Code § 141.002(17).   That
provision, as well as others like it under the structured settlement protection
acts of other states, does not transform a court order into a contract.  Failure
to abide by the terms of a structured settlement may lead to legal consequences
under the statutes but not pursuant to a breach-of-contract theory.

or entity other than RSL-3B LP's predecessor.[61]   Regarding the argument that RSL-3B LP retained a right to receive the payment from its assignment to RSL 2012-1, LP, that right did not emanate from the stipulation.  More importantly, the complaint did not make that allegation.[62]  Although the assignment contract between RSL-3B LP and RSL 2012-1, LP, was not among the documents that Plaintiff attached to the complaint, the notices to SLIC of the transfer were attached and indicate a complete assignment of all rights in the Koehler, Scott, and Purcell payments.[63]   Thus, RSL-3B LP retained no contractual rights in the Koehler, Scott, and Purcell payments and does not have contractual standing to sue either INA or Symetra Defendants for breach of contract.

The allegations regarding AMY's ownership of the payments require a different conclusion.  Plaintiffs alleged that AMY acquired the payments through a complicated series of financing transactions which included loans, security interests, and foreclosure.  At this stage, the court cannot determine the validity or extent of these transactions, but it need not.  The allegations asserted that AMY was more than a lender after it

---

[61]     Although not pled, the court accepts, in the face of no challenge, that RSL-3B LP is the successor entity to RSL-3B-IL, Ltd.

[62]     In fact, the complaint stated that RSL-3B LP "transferred and assigned its ownership interest in the Koehler, Scott, and Purcell [a]ssigned [p]ayments[] to RSL 2012-1, LP[,]."  Doc. 1, Pls.' Orig. Compl. p. 9.

[63]     See Doc. 1-11, Ex. 11 to Pls.' Orig. Compl., Letter from Feldman to SLIC Dated Feb. 27, 2014.

purchased the payments at the foreclosure sale and merged with FinServ, which, if the complaint is read favorably to AMY, rendered it the final assignee of the contractual rights to payment.

## B. Contract Claims and Declaratory Judgment Against INA

As RSL-3B LP lacks contractual standing, only AMY's breach-of-contract claims remain. INA argues that AMY failed to identify a contract that INA breached. AMY's breach of contract claim against INA rests on the following allegation: "Through non-payment of the Koehler [a]ssigned [p]ayment when it came due on August 4, 2016, INA has breached its obligations under the [s]ettlement [a]greement, the parties' [s]tipulation, and the [Structured Settlement Protection Act] [t]ransfer [o]rder."[64] In its responsive brief, AMY argues that it pled "that, by not paying the Koehler [p]ayment to Plaintiffs, INA breached contracts with Plaintiffs: the [s]ettlement [a]greement and the [s]tipulation."[65]

INA was a party to the Koehler settlement agreement and to the stipulation. AMY, however, was not a party to either. Looking first at the settlement agreement, the court recognizes that AMY acquired the rights of the original transferee under the transfer agreement to one of the annuitized periodic payments provided for in the settlement agreement. Accordingly, pursuant to the transfer agreement, AMY received the right to be paid that periodic payment,

---

[64]     Doc. 1, Pls.' Orig. Compl. p. 12.

[65]     Doc. 15, Pls.' Resp. to INA's Mot. to Dismiss p. 8.

16

a security interest in that payment, a power of attorney to enforce Koehler's rights under the settlement agreement to obtain benefit of the transfer agreement,[66] the right to file financing statements, and the right to place liens on all periodic payments. The transfer agreement did not assign the settlement agreement as a whole to Rapid. The question then is whether, by assigning one periodic payment and rights to aid in the enforcement of INA's obligation under the settlement agreement to make payment, Koehler assigned her contractual right to sue INA under the settlement agreement.

AMY cites to section 4005 of the Pennsylvania Structured Settlement Protection Act, which states that "Upon an appropriate judicial order approving a petition for a transfer of structured settlement payment rights, the structured settlement obligor and annuity issuer shall be discharged from all liability for the payments and portions thereof transferred as to all parties except the transferee." 40 P.S. § 4005. Although the statute does indicate that the structured settlement obligor is thereafter obligated to the transferee to make the payment, it does not confer a right to sue for breach of contract under the settlement agreement. AMY also cites a 1997 Pennsylvania case stating that

---

[66]     Neither the grant of a power of attorney nor any other provision of the stipulation specifically granted the right to sue under the Koehler settlement agreement. The court notes that AMY does not offer the unmeritorious argument that a grant of power of attorney allows it to step into the shoes of Koehler under the settlement agreement.

17

upon effective assignment of a *contract*, the assignee "stands in the shoes of the assignor and assumes all of his rights."[67] But Koehler did not assign the entire settlement agreement; she only assigned the right to one payment under the annuity.

The court therefore finds that the allegations in the complaint and AMY's legal arguments fail to establish that it stands in the shoes of Koehler under the settlement agreement with the right to sue INA for breach of contract.[68]

In contrast, the allegations do establish that AMY stood in the shoes of the original transferee with regard to the stipulation[69] as the purchaser of the Koehler payment. The stipulation is governed by Pennsylvania law, which recognizes the following elements of a breach-of-contract claim: "(1) the existence of a contract, including its essential terms[;] (2) a breach of the contract; and[] (3) resultant damages." <u>Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.</u>, 137 A.3d 1247, 1258 (Pa. 2016). INA argues that

---

[67] Doc. 15, Pls.' Resp. to INA's Mot. to Dismiss p. 6 (quoting <u>Smith v. Cumberland Grp., Ltd.</u>, 687 A.2d 1167, 1172 (Pa. Super. Ct. 1997)).

[68] Additionally, the settlement agreement reserved to INA "the right to fund its liability to make the periodic payments" through the purchase of an annuity. Doc. 1-1, Ex. 1 to Pls.' Orig. Compl., Settlement Agreement & Release of All Cls. p. 4. Neither party discussed whether the *funding of its liability* through the purchase of an annuity satisfied INA's obligation under the settlement agreement, but that is certainly a possibility.

[69] The parties recognize the stipulation to be a contract. <u>But see</u> Doc. 5-1, INA's Mem. in Support of its Motion to Dismiss p. 12 ("The only 'contract'[RSL-3B LP] arguably had with INA was the [s]tipulation."); <u>id.</u> p. 13 ("Here, other than perhaps the [s]tipulation, [RSL-3B LP] has not established a contractual relationship with INA.").

AMY failed to plead facts in support of the second element.

Under the terms of the stipulation, INA agreed not to oppose the court petition to approve the transfer and agreed to direct SAFECO to forward the assigned payment to RSL-3B-IL, Ltd., as Rapid's assignee.[70] The complaint recognized only those obligations on INA's part and the additional general obligation to abide by the terms of the stipulation and transfer order.[71] AMY did not allege that INA failed to meet any of those obligations. In fact, the letter from INA to SLIC, which Plaintiffs attached to the complaint, evidences that INA fulfilled its obligation under the stipulation to direct SLIC to make the transferred payment to RSL-3B-IL, Ltd.[72]

Accordingly, the court finds that the allegations in the complaint fail to identify any breach of the stipulation by INA.

Plaintiffs' request for declaratory judgment with regard to INA seeks that the court declare that "INA (and Symetra Life) are both obligated to make the Koehler [a]ssigned [p]ayment to [AMY] but have failed to do so."[73] The complaint alleged no legal basis for INA's obligation other than pursuant to contract law. Because

---

[70] In the stipulation, SAFECO was the only party that agreed to make the payment. See Doc. 1-4, Ex. 4 to Pls.' Orig. Compl., Stipulation p. 3.

[71] See Doc. 1, Pls.' Orig. Compl. p. 5.

[72] See Doc. 1-18, Ex. 18 to Pls.' Orig. Compl., Letter from Drinker Biddle & Reath LLP to SLIC Dated Oct. 12, 2004.

[73] Doc. 1, Pls.' Orig. Compl. p. 15.

the court has determined that neither RSL-3B LP nor AMY alleged a breach-of-contract claim against INA, this requested declaration should also be dismissed.

## C.  Conversion and Wrongful-Offset Claims

INA and Symetra Defendants both moved for dismissal of the conversion and wrongful-offset claims.  As stated above, Plaintiffs dismissed those claims against INA; therefore, the court considers only Symetra Defendants' arguments for dismissal of these claims. Symetra Defendants and Plaintiffs rely on Texas law.

Regarding the conversion claim, Symetra Defendants argue that conversion claims do not apply to money.  Under Texas law, conversion is defined as "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with [its] rights." Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 210 n.44 (Tex. 2002).  "An action for conversion of money will only lie where the money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by its keeper." Paschal v. Great W. Drilling, Ltd., 215 S.W.3d 437, 456 (Tex. App.—Eastland 2006, pet. denied).

The court finds the law to be less absolute than suggested by Symetra Defendants.  Arguably, the complaint alleges that the money was delivered to SLIC by INA for safekeeping through the purchase of an annuity and that it was to be segregated in an intact fund.

20

Whether it was subject to a title claim by its keeper, no doubt, will be the subject of great debate in this action.  The conversion claim should not be dismissed as against Symetra Defendants.

Regarding the wrongful-offset claim, Symetra Defendants argue that a cause of action for wrongful offset arises only in the context of a depository contract between a bank and its depositors. Plaintiffs contend that the doctrine of setoff applies to a wider range of cases.  In the case cited to support their point, <u>Bandy v. 1st State Bank, Overton, Tex.</u>, 835 S.W.2d 609, 618 (Tex. 1992)(internal citations omitted), the Supreme Court of Texas explained the doctrine of setoff: "The doctrine of setoff is ancient, having its roots in early bankruptcy law in England.  The effect of setoff was to allow a defendant in a suit for a debt to raise a debt owed by the plaintiff to the defendant as a defense or counterclaim."  Plaintiffs quoted this portion of the opinion, conveniently leaving out the part defining setoff is a defense or counterclaim.

The <u>Bandy</u> case dealt with a bank's common-law right of offset. <u>See</u> <u>id.</u>  The other two cases that Plaintiffs cited also do not establish that a wrongful-offset claim exists that applies to the allegations presented here.  <u>See</u> <u>Isaacs v. Bishop</u>, 249 S.W.3d 100, 112 (Tex. App.—Texarkana 2008, pet. denied)(discussing offset against damages between parties to a particular case); <u>W. Surety Co. v. Medsolutions, Inc.</u>, No. 3:01-CV-2248-P, 2003 WL 251433, at

21

*6 (N.D. Tex. Feb. 3, 2003)(unpublished)(finding offset not applicable in that case).

As Plaintiffs fail to establish that a cause of action for wrongful offset exists under Texas law as applied to the facts alleged in the complaint, they cannot pursue that claim.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that INA's motion be **GRANTED** and Symetra Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.  If this Memorandum and Recommendation is adopted, the only remaining claims will be: (1) AMY's breach-of-contract claim against Symetra Defendants; (2) Plaintiffs' conversion claim against Symetra Defendants; and (3) Plaintiffs' requests for declarations regarding the rights among Symetra Defendants and Plaintiffs.  **Any subsequent dispositive motion practice must be filed under Federal Rule of Civil Procedure 56.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such

objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 28th day of February, 2018.

_____
U.S. MAGISTRATE JUDGE