UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| A.M.Y. PROPERTY & CASUALTY INSURANCE CORPORATION, *et al.*, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION H-17-956 |
| INSURANCE COMPANY OF NORTH AMERICA, *et al.*, | § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a memorandum and recommendation ("M&R") filed by Magistrate Judge Nancy Johnson. Dkt. 36. The Magistrate Judge considered defendant Insurance Company of America's ("INA") motion to dismiss (Dkt. 5) and defendants Symetra Life Insurance Company ("Symetra Life") and Symetra Assigned Benefits Service Company's ("SABSCO") (collectively, "Symetra Defendants") motion to dismiss (Dkt. 28). *Id.* Plaintiffs A.M.Y. Property & Casualty Insurance Corporation ("AMY") and RSL-3B-IL, Limited Partnership ("3B") (collectively, "Plaintiffs") objected to the M&R. Dkt. 38. Symetra Defendants also objected. Dkt. 37. INA did not object. Having considered the M&R, complaint, motions, responses, replies, objections, and other relevant materials in the record, the court is of the opinion that Symetra Defendants' objections should be OVERRULED and Plaintiffs' objections should be SUSTAINED IN PART and OVERRULED IN PART.

## I. BACKGROUND

This case arises from a series of business transactions following the settlement of three independent lawsuits.[1] Dkt. 1 at 3, 7–8. INA is the obligor under a settlement agreement with Jodie Koehler. *Id.* at 3. SABSCO is the obligor under settlement agreements with Thomas Purcell and Janice Scott. *Id.* at 7, 8. To fund their obligations, INA and SABSCO purchased annuity contracts from Symetra Life. *Id.* at 3, 7, 8. Then, Rapid Settlements, Ltd. ("Rapid") entered into three separate factoring agreements with Koehler, Purcell, and Scott. *Id.* at 4, 7, 8. 3B became the assignee of Rapid's rights. *Id.* at 4.

### A. Settlements and Factoring Agreements

In 1989, INA entered into a settlement agreement with Koehler. *Id.* at 3. The settlement agreement provided for an immediate payment and periodic payments to Koehler over a span of nearly twenty-seven years. Dkt. 1-1 at 3. INA, per the agreement, purchased an annuity contract from Symetra Life to fund its liability for the periodic-payment portion of the settlement. *Id.* at 4. Pennsylvania law governed the settlement agreement. *Id.* at 7

In December 2003, Koehler transferred and assigned to Rapid one periodic payment under the settlement agreement in the amount of $153,500 due on August 4, 2016. Dkt. 1-3 at 1. Koehler granted Rapid all of Koehler's "right, title, and interest (including all benefits and rights relating thereto) in and to the [a]ssigned [p]ayment(s)." *Id.* The transfer agreement also provided Rapid with an irrevocable power of attorney to enforce Koehler's rights under the settlement agreement to obtain

---

[1]For the purposes of a motion to dismiss, the court accepts all well-pled facts contained in Plaintiffs' complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Further, the court recognizes that throughout the background of this case, several entities have evolved. For clarity, the court will refer to Safeco Life Insurance Company as Symetra Life and RSL-3B-IL, Ltd. as 3B as they are allegedly successor entities.

the benefit of the transfer agreement, a security interest in the assigned payment, the right to file financing statements, and a lien on all of Koehler's periodic payments. *Id.* at 4. Koehler and Rapid agreed that the agreement would "be binding upon and [would] inure to the benefit of the parties [t]hereto and their respective successors, heirs, legal representatives[,] and permitted assigns." *Id.* at 5. Rapid could assign its rights under the agreement. *Id.* at 6. Texas law governed the transfer agreement. *Id.* at 5.

In order to secure the required court approval of the transfer, Rapid, 3B, INA, and Symetra Life entered into a written stipulation. Dkt. 1 at 4. The stipulation provided that: (1) all of Koehler's rights in the assigned payment were assigned to Rapid and/or 3B; (2) INA and Symetra Life agreed to abide by the stipulation and not to oppose the court petition to approve the transfer; (3) INA agreed to direct Symetra Life to forward the assigned payment to 3B as Rapid's assignee; (4) Symetra Life agreed to make the assigned payment according to the terms of the stipulation; and (5) in the event that Rapid or 3B further assigned the transferred payment, neither INA nor Symetra Life would be obligated to redirect the payment to any person or entity other than 3B. Dkt. 1-4 at 3. The stipulation also contained a release clause inuring to the benefit of INA and Symetra Life. *Id.* at 4–5. Pennsylvania law governed the stipulation. *Id.* at 6.

On September 13, 2004, the Court of Common Pleas of Montgomery County, Pennsylvania, entered an order transferring Koehler's payment of $153,500 due on August 4, 2016, to Rapid and/or 3B. Dkt. 1 at 6. The order repeated many of the stipulation's provisions, providing that: (1) all of Koehler's rights in the assigned payments were assigned to Rapid and/or 3B; (2) at the direction of INA, Symetra Life would forward the assigned payment to 3B; and (3) neither INA nor Symetra Life would be obligated to redirect the payment or any portion thereof to any other person or entity should the payment be further assigned. Dkt. 1-5 at 3. It also contained a similar release clause as the

3

stipulation. *Id.* at 5–6. In a letter dated October 12, 2004, INA directed Symetra Life to forward the Koehler payment to 3B. Dkt. 1-18.

Purcell and Scott also entered into factoring agreements. Dkt. 1 at 7–8. On February 23, 2004, the Superior Court of New Jersey, Middlesex County, entered an order directing Symetra Life to make certain payments to Rapid that were previously due to Purcell. *Id.* at 8. On March 1, 2007, the Civil County Court of Harris County, Texas, entered an order directing Symetra Life to make certain payments to Rapid that were previously due to Scott. *Id.* at 7.

**B.     Business Transactions**

Beginning in 2003, a series of assignments and financing transactions moved the rights to the payments among various entities. In 2003, AMY made a loan to 3B that included "security agreements and [Uniform Commercial Code ("UCC")]-1 and UCC-3 financing statements covering the Koehler, Scott, and Purcell [a]ssigned [p]ayments." *Id.* at 8. 3B "represented and warranted its right to grant the security interest in the covered collateral[,] which consisted of 'all personal property' 'now owned' or 'hereafter acquired.'" *Id.* at 9.

In 2004, 3B obtained a loan from Amegy Bank, NA ("Amegy") and pledged a security interest in the Koehler, Scott, and Purcell payments. *Id.* at 10. "The original Amegy loan and security interest went through various extensions, restructures, and assignments involving different lenders, ultimately being assigned to Green Bank, NA and to IberiaBank." *Id.* The bank "lenders maintained a continuous lien against the Koehler, Scott, and Purcell [a]ssigned [p]ayments as noticed and disclosed by UCC-1 financing statements and continuations." *Id.*

In 2008, FinServ Casualty Corp. ("FinServ") entered into a participation agreement with AMY involving the loan to 3B. *Id.* at 9. "Thereafter, the loan was split into two loans with a separate loan for FinServ, which has been modified, amended[,] and extended . . . with attendant

4

security agreements and UCC-1 filings." *Id.* Then, in April 2012, 3B "transferred and assigned its ownership interest in the Koehler, Scott, and Purcell [a]ssigned [p]ayments[] to RSL 2012-1, LP ("[RSL 2012]")." *Id.* 3B notified Symetra Defendants of the assignment, but remained RSL 2012's custodial agent for the purposes of receiving and administering the payments. *Id.*

In February 2016, "the banks assigned the lien and related portion of [3B's] loan obligation to [AMY] and FinServ," including the security interest in the Koehler, Scott, and Purcell assigned payments. *Id.* at 10. In March 2016, AMY and FinServ foreclosed on their interests in the Koehler, Scott, and Purcell payments and purchased the payments at a public auction. *Id.* As of January 1, 2017, AMY and FinServ merged, leaving AMY as the successor organization. *Id.* at 9 n.2.

Previously, in July 2016, Symetra Defendants notified AMY that they were executing on a judgment in their favor against Rapid by applying an offset to the $20,000 Scott payment due on July 15, 2016, and to the $153,500 Koehler payment due on August 4, 2016. *Id.* at 11. On December 28, 2016, Stewart Feldman, in his role as chief executive officer of RSL Funding, LLC, sent a demand letter to INA regarding the Koehler payment. Dkt. 1-17. "Another demand letter was sent on March 27, 2017[,] demanding payment of the sums outstanding." Dkt. 1 at 11.

C.  **Procedural Background**

Plaintiffs sued INA, SABSCO, and Symetra Life alleging breach of contract, conversion, and wrongful offset.[2] Dkt. 1. In their complaint, Plaintiffs also seek declarations that:

> (i) after properly foreclosing its security interests and purchasing the collateral at auction, [AMY] is the rightful owner and proper recipient of the Koehler, Scott, and Purcell [a]ssigned [p]ayments; (ii) INA (and Symetra Life) are both obligated to make the Koehler [a]ssigned [p]ayment to [AMY]

---

[2]Plaintiffs have since conceded that they do not allege conversion or wrongful offset against INA. Dkt. 15 at 5 n.3.

5

> but have failed to do so; (iii) SABSCO and Symetra Life are both obligated to make the Scott and Purcell [a]ssigned [p]ayments to [AMY] as they come due.

*Id.* at 15.

In the instant motions, INA moves to dismiss all claims asserted against it, and Symetra Defendants move to dismiss the breach of contract, conversion, and wrongful-offset claims. Dkts. 5, 28. The M&R recommends dismissing all claims against INA, 3B's breach of contract claim against Symetra Defendants, and Plaintiffs' wrongful-offset claim. Dkt. 36 at 22.

## II. LEGAL STANDARD

### A. Magistrate Judge

For dispositive matters, the court "determine[s] de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), Advisory Comm. Note (1983). For non-dispositive matters, the court may set aside the magistrate judge's order only to the extent that it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

### B. Rule 12(b)(6) Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party against whom claims are asserted may move to dismiss those claims when the nonmovant has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the court may consider "the complaint, any documents

attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The attached documents control in the case of a conflict between the allegations in the complaint and the contents of the documents. *Stockwell v. Kanan*, 442 F. App'x 911, 913 (5th Cir. 2011).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). While the allegations need not be overly detailed, a plaintiff's pleading must still provide the grounds of his entitlement to relief, which "requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Evaluating a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Ultimately, the question for a court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff." *NuVasive, Inc. v. Renaissance Surgical Ctr.*, 853 F. Supp. 2d 654, 658 (S.D. Tex. 2012).

## III. OBJECTIONS

Symetra Defendants object that: (1) AMY lacks standing to bring a breach of contract claim; and (2) conversion does not apply in this case. Dkt. 37 at 2, 4. AMY objects that: (1) 3B has contractual standing; (2) AMY has standing to sue for breach of the Koehler settlement agreement; (3) INA breached the Koehler stipulation; and (4) Plaintiffs' declaratory judgment claim is not duplicative of Plaintiffs' contract claim against INA. Dkt. 38 at 6–7.

### A. Contractual Standing

In the motions, responses, and replies, the parties argue extensively regarding contractual standing. Judge Johnson recommends that the court find that 3B has "no contractual rights in the Koehler, Scott, and Purcell payments and does not have contractual standing to sue either INA or Symetra Defendants for breach of contract." Dkt. 36 at 15. Further, "[t]he court . . . finds that the allegations in the complaint and AMY's legal arguments fail to establish that it stands in the shoes of Koehler under the settlement agreement with the right to sue INA for breach of contract." *Id.* at 18. But Judge Johnson found that AMY has standing to sue Symetra Defendants for breach of contract. *See id.* at 16, 22.

#### 1. 3B Standing

Plaintiffs argue that "3B has contractual standing to sue to recover the [d]isputed [p]ayments because 3B retained the right to receive the [d]isputed [p]ayments under the applicable transfer orders (including the Koehler [o]rder) and the Koehler [s]tipulation[,] which provide that INA and Symetra Life are not required to direct the [d]isputed [p]ayments to 3B's assignees." Dkt. 38 at 15. They also argue that "under the agreement between 3B and [RSL 2012], 3B retains the right to receive the [d]isputed [p]ayments as custodial and administrative agent for [RSL 2012], [AMY], and the banks." *Id.* Plaintiffs' arguments fail.

At the outset, the court agrees with the Magistrate Judge that "the [Koehler] stipulation merely precluded the transferee from redirecting the payment to any person or entity other than [3B]." Dkt. 36 at 15. The stipulation provides that if 3B assigns the payment to any other person, "neither INA nor [Symetra Life] will themselves be obligated to [redirect] the [a]ssigned [p]ayment (or any portion thereof) to any person or entity other than [3B]." Dkt. 1-4 at 3. Plaintiffs argue that clause gives 3B the right to receive the payment under the contract. Dkt. 38 at 15. That interpretation is unreasonable. *See Krizovensky v. Krizovensky*, 624 A.2d 638, 643 (Pa. 1993) (contract provisions must be given a reasonable meaning). Simply put, that INA and Symetra Life are not obligated to redirect the payment does not mandate that they make the payment to 3B.

According to Plaintiffs, the agreement between 3B and RSL 2012 provided that 3B retained the right to receive the disputed payments as the custodial and administrative agent for RSL 2012. Dkt. 38 at 16. But Plaintiffs also allege that RSL 2012 no longer has any interest in the disputed payments. *See* Dkt. 1 at 10. Thus, even if 3B agreed to be the custodial agent for RSL 2012, RSL 2012 undisputably does not have rights to the payments. And to the extent that Plaintiffs argue 3B is also the custodial agent to AMY, Plaintiffs' complaint contains no such allegation.[3] Further, such an allegation would run contrary to the rest of the complaint. Plaintiffs allege that AMY (and its predecessors in interest) retained security interests in 3B's property, including the disputed payments. Dkt. 1 at 8–9. AMY then foreclosed on those security interests. *Id.* at 10–11. Whatever interest 3B had in the disputed payments was acquired by AMY. *See* Tex. Bus. & Com. Code Ann. § 9.617.

---

[3]Plaintiffs correctly note that the demand letter sent to INA states that 3B acts as the custodial agent for AMY. Dkt. 1-17 at 1. However, the demand letter is not a part of any contract alleged to be breached by INA, SABSCO, or Symetra Life.

Thus, Plaintiffs' objection is OVERRULED. Further, because the court does not find a curable deficiency in the pleadings, Plaintiffs' motion for leave to amend is DENIED AS MOOT.

### 2. AMY Standing

Symetra Defendants argue that AMY does not have standing to sue for breach of any agreement. Dkt. 37 at 2. According to Symetra Defendants, "AMY . . . do[es] not allege that [RSL 2012] defaulted or was foreclosed on, only 3B." *Id.* at 4. Under their logic, because 3B had already assigned its interest to RSL 2012, AMY could not foreclose on that interest because it was no longer owned by 3B. *Id.* However, RSL 2012 acquired the rights to the disputed payments subject to AMY's security interest. Dkt. 1-17 at 18. Then, AMY foreclosed on and acquired the rights that 3B assigned to RSL 2012, including the rights to the disputed payments. *See* Dkt. 1 at 10. Thus, Symetra Defendants' objection is OVERRULED.

AMY argues that it has standing to sue for breach of the Koehler settlement agreement. Dkt. 38 at 17. Because AMY acquired 3B's rights through the foreclosure, AMY's rights stem from the rights 3B acquired through the various transactions. *See* Tex. Bus. & Com. Code Ann. § 9.617. Judge Johnson found that AMY's rights regarding the settlement agreement could be traced back to the transfer agreement, which provided AMY "the right to be paid that periodic payment, a security interest in that payment, a power of attorney to enforce Koehler's rights under the settlement agreement to obtain [the] benefit of the transfer agreement, the right to file financing statements, and the right to place liens on all periodic payments." Dkt. 36 at 16–17. The court agrees that the transfer agreement provided those rights, but the agreement further provides that Koehler "sells, assigns, and transfers" all of her "right, title, and interest (including all benefits and rights relating thereto) in and to the Assigned Payment(s)." Dkt. 1-3 at 1.

10

Even though INA purchased an annuity from Symetra Life, Plaintiffs allege that "INA was and remains liable for its obligations to make the payments under the Koehler [s]ettlement [a]greement, with the annuity simply facilitating payment for the benefit of INA."[4] Dkt. 1 at 3. Thus, despite the annuity, Koehler maintained the right to sue INA for breach of the settlement agreement. Under both Pennsylvania and Texas law, an assignee stands in the shoes of an assignor. *Crawford Cent. Sch. Dist. v. Commonwealth*, 888 A.2d 616, 620 (Pa. 2005); *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 920 (Tex. 2010). Because Koehler could sue INA for breach of the settlement agreement regarding the assigned payment, the transfer agreement provides the same right to Rapid (and subsequently, 3B). Dkt. 1-3 at 1 ("[Koehler] hereby sells, assigns, and transfers . . . all of [Koehler's] right, title, and interest (including all benefits and rights relating thereto) in and to the [a]ssigned [p]ayment(s).")

Indeed, this right is further illustrated in the Koehler stipulation and court order authorizing the factoring agreement. Both documents provide that "all of Ms. Koehler's rights in connection with the [a]ssigned [p]ayment are being assigned to [Rapid] and/or [3B]." Dkt. 1-4 at 3; Dkt. 1-5 at 3. Further, the assigned payment refers to the payment that Koehler was entitled to under the settlement agreement, not the annuity contract. Dkt. 1-4 at 1, 2. Notably, in the court order, the Court of Common Pleas of Montgomery County, Pennsylvania, ordered that:

> Rapid, [3B], and Ms. Koehler . . . hereby remise, release, and forever discharge INA and [Symetra Life] . . . of and from any and all manner of actions and causes of action, suits, debts, dues, accounts, bonds, covenants,

---

[4]Unless the supporting documents conflict with that allegation, the court must accept it as true. *See Stockwell*, 442 F. App'x at 913. The settlement agreement provides INA with "the right to fund its liability" by purchasing an annuity contract. Dkt. 1-1 at 4. The annuity contract provides INA, as the owner of the annuity, with the sole authority to change the beneficiary of the annuity. Dkt. 1-2 at 3. At the motion to dismiss stage, the court cannot find that purchasing the annuity unambiguously discharged INA from liability based on those documents.

11

> contracts, agreements, judgments, settlements, damages, claims, and demands whatsoever, in law or in equity, in connection with, related to, or arising out of, any claim or allegation that was or could have been asserted in connection with, related to, or arising out of, the [a]ssigned [p]ayment, or the [p]roposed [t]ransfer, which against each other or the [r]eleasees, the [r]eleasors can, shall, or may have except with respect to claims to enforce any rights or obligations of the parties in the [s]tipulation and/or this [o]rder.

Dkt. 1-5 at 5–6.

Though that language tends to suggest that 3B released all of its rights to enforce any agreement other than the stipulation and that order, viewing the alleged facts in the light most favorable to Plaintiffs, a reasonable argument can be made that the order allows 3B to sue for breach of the settlement agreement. As mentioned above, the stipulation and order provide 3B with all of Koehler's rights regarding the assigned payment. Dkt. 1-4 at 3; Dkt. 1-5 at 3. AMY alleges Koehler's rights included enforcing the settlement agreement against INA. Because that is a right provided for in the stipulation, the release does not preclude 3B (and subsequently, AMY) from enforcing it.[5] Thus, AMY's objection is SUSTAINED.

B.   **INA's Alleged Breach of the Koehler Stipulation**

Because Koehler had the right to enforce the settlement agreement against INA, that right was assigned to 3B in the stipulation. Dkt. 1-4 at 3 (all of Koehler's "rights in connection with the [a]ssigned [p]ayment are being assigned to [Rapid] and/or [3B]"). The stipulation also provides that "INA . . . agree[s] to abide by" all of the stipulation's terms. *Id.* Thus, if one of AMY's rights under the stipulation is to enforce the Koehler settlement agreement against INA and INA denied AMY

---

[5]The court recognizes that the stipulation and order do not require INA/Symetra Life to redirect the payment to another entity if the payment is assigned. Dkt. 1-4 at 3; Dkt. 1-5 at 4. However, those provisions, to the extent they are applicable to AMY, do not render INA's alleged obligation to pay the money moot. To hold otherwise would essentially treat the provisions as anti-assignment clauses, which would run contrary to other provisions in the respective documents.

that right by refusing to make the disputed payment, then INA allegedly breached the stipulation by not abiding with its terms. Plaintiffs' objection is SUSTAINED.

**C.     Declaratory Judgment Claim**

Because the court finds that AMY pleads a breach of contract claim against INA, the requested declaratory relief still applies to INA. Thus, AMY's objection is SUSTAINED.

**D.     Conversion**

Conversion refers to "[t]he unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights." *Automek, Inc. v. Orandy*, 105 S.W.3d 60, 63 (Tex. App.—Houston [1st Dist.] 2003, no pet.). "A claim for conversion requires the plaintiff to show that (1) he owned, had legal possession, or was entitled to possession of the property, (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights, and (3) the defendant refused the plaintiff's demand for return of the property." *Id.* Further, "[m]oney is subject to conversion only when it can be identified as a specific chattel and not where an indebtedness may be discharged by the payment of money generally." *Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 456 (Tex. App.—Eastland 2006, pet. denied). "An action for conversion of money will only lie where the money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by its keeper." *Id.*

Symetra Defendants object that a conversion claim is not proper in the instant case because the claim is for money. Dkt. 37 at 4. They argue that the complaint does not allege that "Symetra [Life] was safekeeping money, that the money was kept segregated, or that it was not subject to a title claim by its keeper." *Id.* Further, they argue that because the "claim is entirely based upon

Symetra [Defendants] making a claim to those funds," the funds are the subject of a title claim by its keeper. *Id.* at 5. According to Symetra Defendants, "[t]he test under *Paschal* is not whether the claim to the funds by the keeper is valid," but only whether there is a claim to the funds at all. *Id.* Under this logic, if the keeper makes a claim to the funds, then the conversion claim fails. *See id.*

Regarding the first three additional elements of a claim for conversion of money, Judge Johnson found that the complaint arguably "alleges that the money was delivered to [Symetra Life] for safekeeping through the purchase of an annuity and that it was to be segregated in an intact fund." Dkt. 36 at 20. Regarding the fourth element, Judge Johnson found that "[w]hether [the money] was subject to a title claim by its keeper, no doubt, will be the subject of great debate in this action." Dkt. 36 at 21. Thus, Judge Johnson did not read the fourth element as narrowly as Symetra Defendants. Under Judge Johnson's interpretation, the question is whether the keeper can assert valid title, not whether the keeper asserts title at all.

The money at issue here is subject to a claim of conversion. Reading the complaint in the light most favorable to Plaintiffs, the court agrees with the Magistrate Judge that the complaint arguably alleges that the money was delivered to Symetra Life for safekeeping and that it was to be segregated in an intact fund. Plaintiffs allege that INA and SABSCO purchased annuities from Symetra Life regarding the Koehler and Scott settlements, respectively. Dkt. 1 at 3, 7. The complaint later alleges that Symetra Life improperly converted the "identifiable funds." *Id.* at 13. The court construes the complaint broadly enough to allege that the funds used to purchase the annuity were segregated in intact, "identifiable funds" for the purpose of safekeeping until the underlying payments became due.

Regarding the fourth element, Symetra Defendants' interpretation is too narrow. "An action for conversion will not lie for money represented by a general debt." *Hous. Nat'l Bank v. Biber*, 613

S.W.2d 771, 774 (Tex. Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). But when a defendant has an obligation to deliver the specific money in question, a conversion claim is proper. *Id.* The *Biber* court provided a helpful example. When a depositor deposits a check into an account at a bank, the money becomes the property of the bank. *Id.* The bank becomes a debtor to the depositor, but title to the money passed to the bank. *Id.* The bank must merely pay the depositor back to satisfy its debt—the bank need not pay the depositor back with the same funds deposited to the bank to begin with. *Id.* Thus, the question is not whether the keeper makes some title claim to the money, but whether title to the money passed to the keeper when the money was deposited for safekeeping. *See id.* Here, the complaint can reasonably be read broadly enough to allege that Symetra Life did not acquire title to the money used to purchase the annuity. Rather, Symetra Life incurred the obligation to pay back that specific money according to the payment schedule. Thus, Symetra Defendants' objection is OVERRULED.

## IV. Conclusion

Symetra Defendants' objections (Dkt. 37) are OVERRULED. Plaintiffs' objections (Dkt. 38) are SUSTAINED IN PART and OVERRULED IN PART. Thus, the M&R is ADOPTED IN PART and MODIFIED IN PART. INA's motion to dismiss (Dkt. 5) is GRANTED IN PART and DENIED IN PART. Symetra Defendants' motion to dismiss (Dkt. 28) is GRANTED IN PART and

DENIED IN PART.  The remaining claims are: (1) AMY's breach-of-contract claims against INA and Symetra Defendants; (2) Plaintiffs' conversion claim against Symetra Defendants; and (3) Plaintiffs' requests for declarations regarding the rights among INA, Symetra Defendants, and Plaintiffs.  All other claims are DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on March 29, 2018.

_____
Gray H. Miller
United States District Judge